No. 3142

**Second Circuit**

LAWHON v. BOOTH & FLYNN, LTD.

(April 9, 1931. Opinion and Decree.)

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

W. M. Phillips, of Shreveport, attorney for defendant, appellant.

McGREGOR, J. This is a suit brought by the plaintiff against the defendant for the sum of $432 for the hire of certain mules belonging to the plaintiff. It is admitted and proved that the mules belonged to the plaintiff, that they worked for the defendant, and that the work done by them amounted to $432, the sum sued for herein. It is also admitted and proved that the mules were in charge of one Homer Aiken, an employee of the plaintiff, that he represented to the defendant through its agents and representatives that the mules were his, and that, when they started to work, they were entered on the defendant's books as belonging to the said Aiken, and that all of defendant's dealings in the beginning with reference to the said mules were with the said Aiken.

One W. B. Wilbourne was the agent and representative of the plaintiff, and, just a few days after Aiken had made the deal in his own name, Wilbourne appeared on the scene and notified the defendant's agents and representative that Aiken did not own the mules and was not entitled to receive pay for their work. Plaintiff is a planter and owns Willow Bend Plantation in Bossier parish, and also owns a

large number of teams. Defendant is a contractor, and at this time was putting down a pipe line in Bossier and Caddo parishes, and in the course of its business had occasion to hire many teams. From the record it appears that Homer Aiken, mentioned above, seized upon this opportunity to take some of plaintiff's mules and secure a contract with the defendant in his own name. As a matter of fact, when he took the mules from the premises of the plaintiff, he did so with the knowledge and consent of plaintiff's manager, W. B. Wilbourne. Wilbourne instructed him to take the mules and to put them to work just as he had done on previous occasions. He was not aware of the fact that, when Aiken took the mules to the site of the pipe line work, he represented himself as the owner and made the contract in his own name.

Two or three days after Aiken had taken the mules and had gone to work, Wilbourne, the agent and representative of the plaintiff, took occasion to visit the scene of operations in order to see how the work was progressing. On the first trip that he made to the pipe line operations, he found out that Aiken had made the contract in his own name, and that he claimed to be the owner of the mules. He endeavored at once to correct this matter and have the proper agent of the defendant to enter the mules either in his own name, W. B. Wilbourne, or in the name of Willow Bend Plantation. The testimony introduced by the defendant attempts to refute the testimony of Wilbourne along this line. On possibly two other occasions, Wilbourne made a special trip to the place where defendant was working on the pipe line, and on each occasion brought up the question with reference to the ownership of the mules and with reference to the right of Aiken to receive pay for them. On one occasion, the agent of the defendant agreed with Wilbourne that he would see to it that the check for the work performed by the mules would be held up so that he could secure it either for himself or the rightful owner. This agent testifies that he intended to make this arrangement with defendant's office in Shreveport, but that the check came out sooner than he had expected, and that he did not have opportunity to keep it from reaching Aiken. There is considerable confusion and conflict in the testimony, but, taking it as a whole, it is evident from the record that defendant's agents and representatives had enough notice, information, and warning to put them on their guard. Notwithstanding this, they proceeded to pay Aiken in full for the work done by the mules. They should at least have held the matter up until a full investigation could be made. If they had done so, they would have learned that Aiken was practicing a fraud on all of them, and they would have prevented this lawsuit and would also have saved themselves from paying twice for the work of the mules.

As was stated above, the testimony is conflicting, but the trial judge saw and heard all the witnesses and observed their demeanor in the witness chair, and had a better opportunity to discern the truth than we have. There appears no error to us in the conclusion he reached. He gave the defendant credit for $138; $34 of this was shown to have been advanced by the defendant to Aiken before their attention was called to the fact that he was not authorized to receive anything for the mules; $104 of this was allowed for the reason that the defendant showed that Aiken had paid that sum out for feed which is alleged to have been fed to the mules, and which, therefore, if the testi-

mony is true, benefited the plaintiff. Wilbourne, the agent and representative of plaintiff, testifies positively that he bought and paid for all the feed that the mules consumed, and that he hired and paid all the drivers for all the teams, and that he also paid Aiken the wages that were due him for this time. This being true, it appears to us that the trial judge was extremely liberal. He evidently desired to give the defendant all the relief that the law or equity could possibly justify. Aiken has defrauded both the plaintiff and the defendant. Defendant had an opportunity to save itself after two warnings, and failed to do so. The plaintiff has not appealed or answered the appeal. Judgment of the lower court cannot, therefore, be amended or changed in his favor.

For the reasons assigned, the judgment appealed from is affirmed, the defendant to pay all the costs of both courts.